IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CENTRAL LABORERS' PENSION FUND, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | NO. 11-3327 |
| | ) | |
| DEMOLITION EXCAVATING GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

<u>OPINION</u>

RICHARD MILLS, U.S. District Judge:

Pending before the Court is the Plaintiffs' Motion for Summary Judgment.

I. INTRODUCTION

Plaintiffs Central Laborers' Pension Fund, et al., seek summary judgment against Defendant Demolition Excavating Group, Inc. ("the Defendant" or "DEG") on Counts I and II of the Complaint.  Count One seeks liability against DEG as the alter ego of Dem/Ex Group, Inc. ("Demex"), the judgment debtor in Case Number 08-3069.  Count II seeks

judgment against DEG as the successor of Demex for contributions owed by Demex.

DEG contends that genuine issues of material fact preclude the entry of summary judgment in favor of the Plaintiffs on Counts I and II. The Defendant claims it is entitled to summary judgment.

## II. FACTUAL BACKGROUND

### (A)

Demex is an active Illinois corporation that was incorporated on March 9, 2004. Edward Fisher is the President and Secretary of Demex. He owns 62.5% of the stock in Demex. Demex has been a demolition and excavating contractor which also sells scrap metal. The business address of Demex is 805 Adams Street in Manito, Illinois.

Demex signed several labor agreements that bound the company to pay fringe benefit contributions for employees performing covered work under the agreements. Since June 2005, Demex had submitted contribution report forms, for covered work performed by its employees, to Central Laborers' and a contribution report for May 2011 received by

Central Laborers' indicated that Demex was no longer operating. The agreements signed by Demex also bound the company to the terms and provisions of the Restated Trust Agreements of Central Laborers' Pension, Welfare and Annuity Funds, as well as the Trust Agreements of the other Plaintiffs in Case Number 08-3069.

On March 13, 2008, the Plaintiffs filed suit against Demex and Edward Fisher, Individually, for delinquent contributions and to conduct a payroll examination for unknown contributions.

On August 18, 2008, DEG was formed as an Illinois corporation. Illinois Secretary of State records show Rhonda Fisher as the President of DEG. Edward Fisher is married to Rhonda Fisher. Rhonda Fisher is the principal owner of DEG.

The Defendant alleges Rhonda Fisher formed DEG because she desired to own her own company and have authority over its operations. She also hoped to take advantage of incentives for woman-owned businesses. The Plaintiffs dispute the allegations regarding Fisher's reasons for starting DEG. They state she had no previous experience owning or

managing a demolition company. Rhonda Fisher had worked as a security officer, bank teller, managing a water and fire restoration company, a cleaning business and had done office work for Demex.

On November 10, 2010, Demex and DEG entered into an Asset Purchase Agreement whereby Demex transferred possession and control of its construction equipment, vehicles and other assets to DEG. At the time of the Asset Purchase Agreement, Rhonda Fisher, as President and Secretary of DEG, signed a Non-Negotiable Promissory Note in which DEG promised to pay Demex $1,455,347.00. The Non-Negotiable Promissory Note requires DEG to pay Demex $1,455,347.00 on demand, but demand may not be made until or after November 10, 2022. It does not require DEG to pay any interest to Demex. The Non-Negotiable Promissory Note provided that DEG would assume certain debts of Demex including equipment loans, a line of credit, certain accounts payable, and certain other obligations of Demex.

On June 27, 2011, Demex and the Plaintiffs entered into a stipulated judgment in the amount of $330,816.31 against Demex for past due fringe

benefit contributions, liquidated damages, audit costs and attorney's fees. Judgment was entered more than ten months after the formation of DEG.

The Plaintiffs allege that on March 16, 2012, Demex executed notes and loans with Heartland Bank and Trust Company amounting to $352,382.80. DEG disputes the allegation and states that Plaintiffs offer only three unsigned promissory notes in support of the assertion.

Like Demex, DEG is a contractor whose primary source of revenue is the demolition of buildings and the sale of scrap materials extracted from the demolition sites. DEG's business address is also 805 S. Adams Street, Manito, Illinois 61546. DEG uses, or has used, many of the same workers who had previously been employed by Demex, including: Rhonda Fisher, Edward Fisher, Jeffrey Conklin, Daniel Dawe, Tyler Dawe, Shawn Morris, Seth Rice and Larry Saal. Citing Rhonda Fisher's Affidavit, DEG alleges that some of its employees were formerly employed by Demex but many of DEG's employees were not employed by Demex.

The Plaintiffs allege DEG acquired its equipment, vehicles, and tools of the trade by entering into the Asset Purchase Agreement with Demex.

DEG disputes the allegation to the extent that although some of the equipment, vehicles and tools were purchased from Demex, many of DEG's assets are not former Demex assets.

The Plaintiffs allege that, until the related loans are paid, the titles to the equipment, vehicles and tools of the trade that were transferred to DEG pursuant to the Asset Purchase Agreement remain in Demex's name. DEG disputes the allegation and states that title to the equipment and tools sold to DEG by Demex were transferred pursuant to a Bill of Sale executed concurrently with the Asset Purchase Agreement.

The Plaintiffs allege at the time that DEG executed the Asset Purchase Agreement with Demex, DEG's officers knew that Demex owed fringe benefit contributions to the Plaintiffs. Moreover, DEG incorporated for the purpose of avoiding the collective bargaining agreements executed by Demex.

DEG disputes the foregoing assertions and states that the only support offered by the Plaintiffs is DEG's alleged untimely response to their Requests for Admission, which was the subject of DEG's Motion to

Withdraw Admissions which the Court allowed.[1]  Moreover, Rhonda Fisher

claims she had no knowledge of any claim by the Plaintiffs against Demex

at the time the Asset Purchase Agreement was executed.  Additionally, DEG

claims it was incorporated for a number of reasons, none of which were to

avoid the collective bargaining agreements involved in this case.  In fact, the

Defendant contends Rhonda Fisher was not aware of any collective

bargaining agreement to which Demex was a signatory at the time she

formed DEG.  The Plaintiffs dispute this allegation.

(B)

Edward Fisher has represented DEG at pre-job meetings and receives

contract proposals from prospective customers.  Rhonda Fisher had no prior

experience as an owner of a demolition company/contractor.  Edward Fisher

has received checks from DEG totaling $29,582.64 from January 7, 2011

through March 9, 2012.

DEG contends that none of its shareholders, directors, or officers are

---

[1]In an Order entered on December 11, 2013, the Court found that the
interests of justice weighed in favor of allowing the Defendants withdraw
certain admissions that otherwise would have been deemed admitted because
they were not served in a timely fashion.  See Doc. No. 34.

shareholders, directors or officers of Demex.  The Plaintiffs dispute the allegation and suggest that Edward Fisher, the President of Demex, is an officer of DEG based on the posting of a $15,000 payment to Edward Fisher categorized as an "Officer Payable."  Moreover, the major shareholder and President of Demex is married to the majority shareholder and sole officer of DEG.

DEG asserts Edward Fisher has no authority to act on its behalf.  He has no authority to sign checks or any other document on behalf of DEG and DEG does not hold out Edward Fisher as its agent or as a manager. The Plaintiffs dispute the allegation, pointing to an exhibit which shows Edward Fisher was sent a contract proposal for work to be performed at the Decatur Firestone plant.  Moreover, they cite an exhibit which is a memorandum to DEG employees under the names of Edward Fisher and Rhonda Fisher.

Edward Fisher is skilled at estimating and bidding on jobs.  DEG claims he provides consulting duties in that capacity and provides general advice regarding job-site coordination, but is not an employee.  DEG

contends any payments it made to Edward Fisher were reimbursements for business expenses he incurred performing consulting duties on behalf of DEG. The Plaintiffs dispute the allegation and claim that DEG's own accounting records classify payments to Edward Fisher as "employee advances" and "officer's payable." Moreover, during Rhonda Fisher's deposition, she was asked why a $5,000 payment was made to Edward Fisher and she responded, "You'll have to ask him that."

The Defendant alleges DEG is owned by the following three individuals: Rhonda Fisher (76.9%), Steven Fisher (11.55%), and Tyler Dawe (11.55%). The Plaintiffs dispute the allegation and note that Defendant's Answers to Interrogatories initially stated that Rhonda Fisher owned 100% of the stock in DEG.

DEG claims to currently own the assets listed on the Bill of Sale. Several such assets are subject to various bank liens but Demex no longer owns any of the assets. The Plaintiffs dispute the assertion and allege Rhonda Fisher testified that title to vehicles or equipment remains in Demex's name. In addition, the Defendant's Responses to Requests to

Produce provides DEG holds no titles to vehicles or equipment.

The Defendant asserts that although some of DEG's equipment and other assets were purchased from Demex, numerous other assets were obtained via means other than the Asset Purchase Agreement with Demex. The Plaintiffs dispute the allegation on the basis that Rhonda Fisher testified that titles to vehicles or equipment remain in Demex's name. In addition, the Defendant's Responses to Request to Produce provided DEG holds no titles to vehicles or equipment.

DEG alleges the Asset Purchase Agreement requires it to pay certain of Demex's obligations, which DEG assumed under that agreement. DEG has made such payments in accordance with those terms. The Plaintiffs dispute that DEG has any legal obligation to Demex's creditors.

The Defendant alleges Demex's equity in the assets transferred to DEG was approximately $851,038.00. The Plaintiffs dispute the allegation, based on a document provided by DEG. The Plaintiffs allege the document shows an equity of $991,038. Additionally, the Plaintiffs dispute whether the office and shop buildings could be transferred from Demex to DEG

since Edward Fisher and Rhonda Fisher personally own the property and buildings where Demex and DEG conduct their businesses.

DEG contends it assumed Demex's liabilities in the amount of no less than $1,155,604.77.  The Plaintiffs dispute the amount alleged and claim that the numbers are inconsistent with the Asset Purchase Agreement and the exhibit provided by DEG.

The Defendant contends no payments have been made to Demex under the Asset Purchase Agreement and associated Promissory Note because both documents grant DEG the right to make payments directly to those of Demex's creditors whose obligations DEG assumed instead of making the payments to Demex.  The Plaintiffs dispute that DEG legally assumed Demex's obligations with Demex's creditors.

The Defendant asserts the total amount of payments for the obligations assumed by DEG under the Asset Purchase Agreement and Note are uncertain, which is why no payments are required under the Note for several years.  DEG will not be able to accurately calculate the amount of obligations assumed for quite some time, and only after such calculation

will DEG be able to determine how much, if any, is owed directly to Demex. The Plaintiffs dispute the assertion that no payments are required until 2022 because the amounts of the obligations are uncertain. Neither the Asset Purchase Agreement, nor the Promissory Note, mention any uncertainty about the amount owed by DEG. Moreover, the Plaintiffs claim if there is uncertainty as to the total amount to be paid by DEG, that would be further proof of a sham transfer of assets on the part of the Defendant and Demex.

DEG has made payments for certain unpaid taxes owed by Demex because DEG believes that the IRS has the authority to levy the building DEG uses for its operations, as well as Rhonda Fisher's personal residence, if the taxes remain unpaid. Thus, DEG claims to directly benefit from the payment of such taxes, an allegation which the Plaintiffs dispute.

DEG contends it has deducted the amount of taxes it has paid on behalf of Demex from the future amount due under the Promissory Note it gave to Demex. The Plaintiffs dispute the allegation because it is based on the "self-serving" affidavit of Rhonda Fisher instead of documentary

evidence such as DEG's financial or accounting records.

No real property was transferred to DEG. The Defendant claims DEG does not co-mingle funds with Demex. The Plaintiffs dispute the assertion as to co-mingling because DEG accounting records show transfers to and from Demex bank accounts. DEG alleges it maintains separate bank accounts from Demex. Moreover, all DEG employees are paid from DEG's own bank accounts. The Plaintiffs dispute the preceding allegations because they are based on the "self-serving" affidavit of Rhonda Fisher rather than documentary evidence such as DEG's financial or accounting records.

DEG has always operated using the name "DEG." DEG does not routinely use its formal corporate name in its daily operations. The Defendant alleges DEG does not serve any of the same customers as Demex. The Plaintiffs dispute the allegation as to customers and claims that DEG did work at the Firestone Plant in Decatur, Illinois in 2011 and 2012. Demex also performed work at the Firestone Plaint from 2005 through 2010. In a deposition on March 8, 2010, Edward Fisher testified

that Demex's work at Firestone was ongoing.

DEG currently uses a different accountant/bookkeeper than Demex. The Plaintiffs note that Marsha Hoelzel performed bookkeeping/accounting work for both Demex and, until December 2011, DEG.

DEG contends its demolition business is exclusively focused on structures less than five stories high, whereas Demex specialized in taller buildings. The Plaintiffs dispute this allegation because it is based on the "self-serving" affidavit of Rhonda Fisher rather than documentary evidence such as contracts or project/job reports.

DEG has never held itself out to the public or its customers as a continuation of Demex.

Since judgment was rendered against Demex on June 27, 2011, Demex has not paid any money towards the judgment. DEG has not executed any labor agreements with the Plaintiffs.

## III. DISCUSSION

### A. Legal standard

Summary judgment is appropriate if the motion is properly supported

and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). The Court construes all inferences in favor of the non-movant. See Siliven v. Indiana Dept. of Child Services, 635 F.3d 921, 925 (7th Cir. 2011). To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture." See Harper v. C.R. England, Inc., 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted).

When a court is considering cross-motions for summary judgment, it must "construe all inferences in favor of the party against whom the motion under consideration is made." Hendricks-Robinson v. Excel Corp., 154 F.3d 685, 692 (7th Cir. 1998).

B. Successor liability

(1)

The Plaintiffs contend that based on a "sufficient indicia of continuity" between the two entities and the assertion that DEG had notice of Demex's liability, DEG is the successor company of Demex.

The United States Court of Appeals for the Seventh Circuit has held

that successor entities can be held liable for the fringe benefit contributions of another company if (1) there is "sufficient indicia of continuity" between the two companies; and (2) the successor company had notice of the predecessor's liability. See Upholsterers International Union Pension Fund v. Artistic Furniture of Pontiac, 920 F.2d 1323, 1329 (7th Cir. 1990). There is not a formal definition of a successor. See N.L.R.B. v. Jarm Enterprises, Inc., 785 F.2d 195, 200 (7th Cir. 1986). However, a number of factors may be considered: whether the companies employed the same individuals, including supervisory personnel; whether they produced the same products; whether the companies used the same plant, machinery and equipment; whether the second company fulfilled the work obligations or commitments of the previous entity. See Artistic Furniture, 920 F.2d at 1329.

In Artistic Furniture, there was a complete change of ownership between the predecessor and successor companies. See id. at 1325. However, the successor company essentially employed the same workforce, including supervisory personnel, of the previous company. See id. at 1329.

The successor entity used the same plant location, machinery and equipment, while producing the same product. See id. The successor company finished the predecessor's uncompleted work orders and honored its warranty claims. See id. The court concluded that the foregoing facts adequately established that a "sufficient indicia of continuity" existed between the two companies for the purpose of imposing successor liability. See id.

The Plaintiffs allege that the "indicia of continuity" between DEG and Demex is analogous to that which existed in Artistic Furniture. The President of Demex is married to the President of DEG. While acknowledging that the ownership of the companies is technically different, the Plaintiffs contend that Rhonda Fisher is merely a figurehead for DEG.

DEG distinguishes this case from Artistic Furniture by noting that none of its officers were officers of Demex; it did not have any of the same customers; and DEG did not complete any of Demex's work orders. However, the Plaintiffs claim that the Firestone Plant is a customer of both entities. Additionally, because DEG has stated that it has no titles to any

equipment or vehicles, the Plaintiffs suggest that it must be using equipment obtained from Demex. DEG further alleges it does not perform the same type of demolition work as Demex and has never held itself out as a continuation of Demex. Moreover, both Demex and DEG still exist. Additionally, although the official names of the entities are somewhat similar (Demolition Excavating Group, Inc. and Dem/Ex Group, Inc.), the Defendant has always used the nickname "DEG" in its operations and not the full corporate name.

The Plaintiffs point to Sullivan v. J.S. Sales Plumbing, Inc., 1994 WL 55658 (N.D. Ill. Feb. 23, 1994), wherein the owner of a plumbing company ceased to do business soon after judgment was entered against the company for delinquent pension fund contributions. See id. at *1-2. A new company was thereafter formed by his wife, a former teacher who was unemployed. See id. at *2. The husband did all of the plumbing work for the new company while receiving no salary or compensation. See id. Both husband and wife were authorized to sign checks on behalf of the new company. See id. The husband purchased a truck for business use for the

first company, a truck that was also used when he worked for J.S. Sales and that entity made payments on the truck.  See id.  The second company paid bills that the first company owed, used the same telephone number and had many of the same customers.  See id.  Additionally, interest on a loan to the first company was claimed on a tax return filed by the second company.  See id.  Based on these facts, the court determined that the wife was an "apparent figurehead owner" of J.S. Sales, which was thus liable for the debts of the first company.  See id. at *5, 7.

The Plaintiffs contend that the facts of this case are similar to those in Sullivan.  While the owner of the successor company in Sullivan had no experience in operating a plumbing business, Rhonda Fisher had no experience managing or operating a demolition and scrap business.  They further contend that Ms. Fisher's lack of involvement in this litigation, DEG financial transactions and field operations shows that she is simply a figurehead.

For example, the Plaintiffs assert that Rhonda Fisher did not know who represented Demex during the preparation and execution of the Asset

Purchase Agreement. She made no visits to DEG projects. Ms. Fisher did not know about notifications to lenders, assignments made by Demex to DEG for the equipment or bills of sale. She had no knowledge about certain major transactions. According to the Plaintiffs, these facts demonstrate Rhonda Fisher is simply a figurehead.

DEG contends that no courts have ever considered an individual's status as a "figurehead owner" to be a significant factor in analyzing successor liability. To the extent that the district court in Sullivan relied on the second company owner's status as a figurehead, DEG notes that there were many considerations that were much more significant to the court's determination that the second company was a successor company.

The Plaintiffs also note that both entities operate out of an office at the same address. Edward Fisher and Rhonda Fisher own the building used by DEG and Demex. DEG obtained its tools, vehicles and equipment from Demex pursuant to the Asset Purchase Agreement. The companies are both in the business of the demolition of buildings and selling of scrap materials. Additionally, the Plaintiffs contend that many of the same employees

worked for both companies.

The Plaintiffs further claim that DEG has fulfilled many of Demex's financial obligations, including tax liability and other payments pursuant to the Asset Purchase Agreement.  DEG disputes the assertion that this was a gratuitous assumption of liabilities in order to continue Demex's business.  Rather, DEG assumed certain liabilities as consideration in exchange for assets it received under the Asset Purchase Agreement.

Based on all of these circumstances, the Plaintiffs contend there is "sufficient indicia of continuity" between the two entities.  DEG contends that Plaintiffs are unable to show it was a continuation of Demex.  Rather, the facts show that DEG stands alone as its own corporation which is separate and apart from Demex.  Accordingly, DEG claims that Plaintiffs Motion for Summary Judgment should be denied and summary judgment should be entered in its favor on Count II of the Complaint.

The Plaintiffs next allege that DEG had notice of the fringe benefit contributions owed by Demex.  They emphasize the relationship between the owners of the two companies and the fact that Rhonda Fisher had no

experience in the field.  Additionally, they contend that many of the same factors already discussed demonstrate that DEG had notice of Demex's liability to the Plaintiffs.  DEG denies having notice of Demex's liability.

(2)

The Court agrees with the Plaintiffs that there are a number of curious circumstances surrounding the formation of DEG.  Along with other factors, the fact that the owner of DEG is married to the owner of Demex and had no experience in the field before forming DEG is interesting.  Upon examining the evidence in a light most favorable to DEG, however, the Court is unable to conclude that Plaintiffs are entitled to summary judgment on Count I.

The Plaintiffs criticize DEG's reliance on the "self serving affidavit" of Rhonda Fisher.  However, a plaintiff may rely on "self-serving" evidence to create a genuine issue of material fact.  See Hill v. Tangherlini, 724 F.3d 965, 968 n.1 (7th Cir. 2013).  Moreover, an affidavit is an acceptable piece of evidence on which a party attempting to defeat summary judgment may produce.  See Rooni v. Biser, 742 F.3d 737, 740 (7th Cir. 2014).  As long

as the affidavit contains information that is otherwise admissible, it cannot be discounted simply because, like most affidavits in support of or opposition to summary judgment, it is "self serving."[2]  See id.

When the evidence is viewed in a light most favorable to DEG, the Court is unable to conclude the applicable factors establish it is Demex's successor.  There are legitimate factual disputes regarding Edward Fisher's role and degree of authority at DEG.  Moreover, the parties dispute the number of employees who have worked at both entities.  DEG claims that although some of its workers have been employed at Demex, many DEG employees were not employed there.  The parties also dispute the extent to which DEG has used Demex's equipment.  DEG claims to have purchased some of the equipment from Demex.  There are legitimate disputes regarding the number of common customers the two companies have serviced.  Although both companies engage in demolition work, DEG distinguishes the work it performs from that of Demex by claiming only to

_____

[2]Of course, other types of evidence–financial or accounting records, contracts or project reports–might be more probative than a "self-serving" affidavit.

demolish structures of a certain height.

The aforementioned factual disputes distinguish this case from Artistic Furniture, wherein the successor company employed the same workforce of the previous company, used the same machinery and equipment, completed the predecessor's work orders and honored its warranty claims. See Artistic Furniture, 920 F.2d at 1329.

Based on these factual disputes, the Court is also unable to determine that this case is like the facts in Sullivan. In that case, the record established that after judgment was entered against a plumbing company for delinquent pension fund contributions, the owner of the plumbing company attempted to engage in the plumbing business by having his wife start a new company as an "apparent figurehead." See Sullivan, 1994 WL 55658, at *1-2. For all practical purposes, the new plumbing business was a continuation of the predecessor company and thus liable as a successor. See id.

The facts here are not at all analogous to Sullivan. Moreover, although it may seem likely that Rhonda Fisher would have known of the

claims against her husband's company, there is a factual dispute as to whether DEG had notice of Demex's liability. Rhonda Fisher claims she started DEG because she observed some of the struggles her husband had with Demex and hoped to avoid making similar mistakes. She also said that she wanted to take advantage of incentives for women-owned businesses. Additionally, Rhonda Fisher states that when the Asset Purchase Agreement was executed, she had no knowledge of the collective bargaining agreement entered into by Demex or any claims against that entity by unions.

Because there are factual disputes regarding whether there is a "sufficient indicia of continuity" between the two companies and regarding whether DEG had notice of Demex's liability, the Court concludes that summary judgment is not warranted in favor of either party on Count II.

C. Alter ego liability

(1)

The Plaintiffs contend that DEG is the alter ego of Demex, stating that DEG is a disguised continuance of the first company and the transfer

of assets was a sham transaction which was designed to avoid the payment of delinquent fringe benefit contributions.  Additionally, the Plaintiffs point to the close financial ties between the two companies and other factors in alleging that DEG is Demex's alter ego.

"The alter ego doctrine focuses on the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as through a sham transfer of assets."  International Union of Operating Engineers, Local 150 v. Centor Contractors, Inc., 831 F.2d 1309, 1312 (7th Cir. 1987) (internal quotation marks and citation omitted).  An important inquiry is an entity's "unlawful motive or intent."  Id.  In Centor Contractors, in determining that a subsequent partnership was liable under the collective bargaining agreement as the alter ego of a dissolved corporation, the Seventh Circuit relied on a letter which stated in part that the first company would be operating under a new name because of "labor problems."  See id. at 1313. The court also found significant that the former company had transferred a large amount of cash from the corporation shortly before its dissolution.

See id.

The Plaintiffs state that Demex transferred its equipment, vehicles and tools of the trade to DEG pursuant to the Asset Purchase Agreement executed on November 10, 2010. The Promissory Note does not require a payment of principal or interest on the Note until November 10, 2022, and it requires no interest payments. Moreover, the property transferred had an estimated value of $1,605,462.00 for the demolition equipment, transportation equipment, utility equipment, and other assets and property. The Asset Purchase Agreement provided that DEG would assume Demex's obligations totaling $1,115,604.77, or 69% of the value of the assets. The Plaintiffs claim DEG was able to take possession of equipment and use it for ten years without making any installment payments, principal or interest. The Plaintiffs further allege that the legal obligations on the notes executed by Demex, which DEG agreed to pay under the Asset Purchase Agreement, remained with Demex. Because DEG assumed no legal obligations with respect to creditors, therefore, any creditor would have recourse only against Demex. The Plaintiffs contend this demonstrates a

sham transfer of assets from Demex to DEG which was designed to prevent the Plaintiffs, as judgment creditors, from obtaining assets of Demex to pay the delinquent contributions.

DEG alleges the Plaintiffs' math is erroneous and that it gave more than adequate consideration in exchange for the assets. The Asset Purchase Agreement required DEG to assume some of Demex's liabilities and payment made to those creditors would be deducted from the amount owed to Demex under the promissory note executed concurrently with the Asset Purchase Agreement. DEG disputes the suggestion that the assumption of Demex's liabilities demonstrates that the two companies are alter egos and claims that the assumption of liabilities is a very common form of consideration used by companies in arms-length transactions on a regular basis. It is simply one of many different ways in which companies may structure a transaction. The Court recognizes that the assumption of liabilities is often a legitimate form of consideration which may also be used, in certain circumstances, as part of a sham transaction to prevent a creditor from reaching certain assets.

DEG further asserts the Plaintiffs' allegation that Demex transferred equipment worth $1.6 million is erroneous because that figure also included the value of the real property out of which Demex's business operated, which was not transferred to DEG, resulting in a $225,000 discrepancy. Moreover, Demex only had equity in the assets it transferred of $851,000. Accordingly, DEG claims that it assumed liabilities of at least $1,115,604.77, in exchange for Demex's equity in the assets, which was worth approximately $851,000. By assuming these liabilities, DEG contends that it paid more than adequate consideration.

In further support of their argument, the Plaintiffs cite the deposition testimony of Edward Fisher from the previous lawsuit involving Demex. Mr. Fisher testified that he could not recall to whom he had sold Demex's equipment, which had a value of $1.6 million, merely ten months earlier. DEG contends that Edward Fisher's testimony is irrelevant because he does not speak for DEG. Moreover, it alleges that Rhonda Fisher formed DEG for lawful purposes.

(2)

The Plaintiffs also assert the close financial ties between Demex and DEG support its argument that DEG is the alter ego. The Seventh Circuit has found this factor to be significant in applying the alter ego analysis to two businesses. See Central State, Southeast and Southwest Areas Pension Fund v. Sloan, 902 F.2d 593, 597 (7th Cir. 1990). For a three month period, the two businesses in Sloan kept funds in the same checking account and thus employees of one business were paid from the account of the other. See id. at 595. Additionally, two bank loans were in the names of the individual owners and the husband's company while the collateral was being used by the wife's company. See id. DEG contends Sloan is inapposite because DEG and Demex do not commingle funds and its employees are paid solely from DEG's accounts.

The Plaintiffs contend that, like the businesses in Sloan, close financial ties have existed between DEG and Demex. Pursuant to the Asset Purchase Agreement, DEG is paying the tax liabilities of Demex. Moreover, DEG is paying the creditors of Demex, on behalf of Demex, for loans in Demex's name. Ed and Rhonda Fisher operate the two businesses out of

the same property, which they jointly own, at 805 S. Adams Street, Manito, Illinois 61546. Ed Fisher has been paid $29,582.64 by DEG from January 2011 through March 2012. While Rhonda Fisher was employed at Demex, she was paid $954.35 to perform office work. As President of DEG, Rhonda Fisher is paid $942.20 per week. The Plaintiffs contend that, based on these facts, it is indisputable that the two entities are financially intertwined.

DEG relies on Chicago Dist. Council of Carpenters Pension Fund v. Vacala Masonry, 967 F. Supp. 309 (N.D. Ill. 1997), in alleging it is not a "disguised continuance" of Demex. In that case, after considering the issue of intent, the Northern District examined five factors in determining whether there was such a continuance: (1) common management or supervision; (2) common ownership; (3) same business purpose; (4) identical business operations; and (5) shared equipment. See id. at 317 n.6. DEG alleges that the companies are not under common management, supervision or ownership.

The Plaintiffs contend that the next two factors support the existence

31

of an alter ego relationship.  They claim Demex and DEG have "strikingly similar" business operations in that companies have the same business purpose, operate out of the same location, use the same equipment and vehicles and employ many of the same individuals.  DEG claims that although the entities generally operate in the same industry, their demolition activities do not focus on the same types of structures.  DEG purchased equipment from Demex that would have few uses outside of the demolition industry.  Thus, DEG claims that because they have different customers and focus on different sized projects, DEG and Demex do not have the same business purpose.

Although the companies do operate out of the same location, DEG alleges that it uses some equipment that was not obtained from Demex and also has employees that have not worked for Demex.  Additionally, it has a separate bank account and uses a different accountant/bookkeeper than Demex.  There was no commingling.

The Court has previously discussed the fifth factor–whether the companies shared equipment–in considering the parties' arguments about

the Asset Purchase Agreement and whether adequate consideration was exchanged for the equipment.

(3)

Based on the current record, there are a number of curious circumstances which could lead to the inference that DEG is a disguised continuance of Demex and was created to avoid the obligation to pay fringe benefit funds. However, there are factual disputes regarding whether there was an "unlawful motive or intent" and whether the Asset Purchase Agreement involved a sham transfer.

It does seem particularly odd that the Promissory Note does not require a payment of principal or interest on the Note for twelve years. Upon reviewing the record, however, the Court is unable at this time to determine whether the Asset Purchase Agreement involved a sham transfer, given the factual disputes over the effect of DEG's assumption of Demex's liabilities, the inclusion of the value of real property out of which Demex's business operated and Demex's equity in the assets exchanged.

There are a number of facts which could suggest that the companies

were financially intertwined. It is certainly noteworthy that Rhonda Fisher makes almost the exact amount as President of DEG as she did to do office work for Demex. When the facts are viewed in a light most favorable to DEG, the Court is unable to conclude that there was commingling of funds as was the case in Sloan. Moreover, there are factual disputes as to whether the companies were under common management or supervision.

The payments from DEG to Edward Fisher might be interpreted as evidence that he was behind both companies. According to Rhonda Fisher's Affidavit, however, the payments were for consulting duties based on his knowledge of the demolition business. The cited portion of Mr. Fisher's testimony from another case, wherein it appeared he could not recall that he sold Demex's equipment to DEG months earlier, seems very odd. Because DEG has produced an affidavit which states that Edward Fisher is not authorized to speak on its behalf, the Court is unable based on the correct record to construe that statement from another case as evidence that he was being evasive about his role in DEG.

Undoubtedly, the businesses are very similar. However, DEG and

Demex focus on different sized projects. Moreover, there are factual issues regarding the adequacy of consideration for DEG's equipment, in addition to the extent that the two companies had different customers.

Based on the foregoing, the Court concludes there are genuine issues of material fact which preclude the entry of summary judgment regarding whether DEG is Demex's alter ego.

Ergo, the Motion of the Plaintiffs' for Summary Judgment [d/e 19] is DENIED.

The final pretrial conference is hereby set for April 28, 2014 at 2:00 p.m.

ENTER: March 31, 2014

        FOR THE COURT:

                              s/Richard Mills

                              Richard Mills

                              United States District Judge